UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RENEE MINISTERI,<br>Personal Representative of the Estate of<br>Anthony Ministeri;<br>　　　Plaintiff,<br>v.<br><br>AECOM TECHNOLOGY CORPORATION,<br>RELIANCE STANDARD LIFE INSURANCE<br>COMPANY<br>Defendants, | C.A. No. |

# COMPLAINT

## TYPE OF ACTION

1. This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, to contest a denial of life insurance benefits.

## PARTIES

2. At all relevant times, plaintiff's decedent, Anthony Ministeri (hereinafter "Ministeri") was a citizen of the Commonwealth of Massachusetts, residing in Merrimac, Essex County.

3. Ministeri died on October 2, 2015. On December 31, 2015 his widow, Renee Ministeri, was duly appointed Personal Representative of his estate. (See attached Exhibit 1). Prior to his death, Ministeri was an employee of AECOM Technology Corporation.

4. AECOM Technology Corporation ("AECOM"), which maintains offices at One California Plaza, 300 South Grand Avenue, 11th Floor, Los Angeles, California 90071, provided

group life insurance coverage for its employees through Reliance Standard Life Insurance Company.

5. The Reliance Standard Life Insurance Company ("Reliance") is a corporation with its principal place of business at Philadelphia, Pennsylvania, and is engaged in the business of issuing and administering policies of life insurance. In order to provide life insurance through Reliance for its employees, it was necessary under the terms of Reliance's policy for AECOM to become a "Participating Unit" in the "RSL Employer Trust".

6. AECOM purchased Life Insurance through RSL Employer Trust, and AECOM and was assigned the "Participating Unit Number" of GL151836, which, in various documents relevant to this case is also used as the "Policy Number" by Reliance Standard Life Insurance Company.

## JURISDICTION AND VENUE

7. The Plan is an "employee welfare benefit plan" or a "welfare plan" subject to ERISA, including its civil enforcement provisions. ERISA §§3(1), 3(3), 4(a), 502(a)(1)(B), and (a)(3), 29 U.S.C. §§1002(1), (3), 1003(a), 1132(a)(1)(B), and (a)(3).

8. The Court has jurisdiction of this action pursuant to 28 U.S.C. §1331, and pursuant to §§502(a)(1)(B) and (a)(3) of ERISA 29 U.S.C. §§1132(a)(1)(B), (a)(3), (e)(1), and (g).

9. Venue is appropriate pursuant to ERISA §502(e)(2), 29 U.S.C. §§1132(e)(2), because, *inter alia*, the breach that is the subject of this lawsuit took place in this district.

## CAUSE OF ACTION

## IMPROPER DENIAL OF LIFE INSURANCE BENEFITS

10. Plaintiff repeats and realleges paragraphs 1 through 9 of this Complaint as if fully set forth here.

11. Coverage under the Plan was provided to Ministeri as an employee of AECOM Technology Corporation.

12. Ministeri, at all relevant times, was covered as a participant in the Plan, and at all times complied with all relevant terms and obligations of the Plan.

13. AECOM Technology Corporation is designated as the Plan's Sponsor and Plan Administrator.

14. Reliance Standard Life Insurance Company, a member of the Tokio Marine Group, is designated as the Plan's Claim Administrator.

15. Ministeri was employed by AECOM Technology Corporation as of April 1, 2004 as a senior construction service executive. Mr. Ministeri, then 61, had many years of experience in the area of construction management, and had personally handled projects worth as much as a billion dollars. This expertise and experience made him the ideal candidate for his position with AECOM.

16. Under the terms of his employment with AECOM, Mr. Ministeri was required to work 24 hours per week, in return for which he received an initial base pay of $156,000.00.

17. As of his date of hire, Mr. Ministeri became entitled to benefits provided by his employer, including but not limited to Short Term Disability, Long Term Disability, and Life Insurance in an amount equal to 4 times his base pay, which equaled $624,000.00. In addition, he was entitled to apply for additional group life insurance coverage in an amount equal to three

3

times his base pay, which equaled $468,000.00. He did, in fact, apply for, obtain, and pay all associated premiums for this coverage up to and including the time of his death. Thus, at all times relevant hereto, Mr. Ministeri had group life insurance coverage through his employer with Reliance Life Insurance totaling $1,092,000.00.

18. On May 2, 2014, while in New York City on a business trip, Mr. Ministeri experienced episodes of confusion including an inability to find his hotel room. Upon his return to Massachusetts from the business trip, Mr. Ministeri was seen in the Emergency Room of Anna Jacques Hospital on May 7, 2014, complaining of confusion and an inability to perform normal functions such as driving and dressing himself.

19. A CT scan of Mr. Ministeri's brain was performed at Anna Jacques Hospital on May 7, 2014. It revealed a brain lesion.

20. Mr. Ministeri was next seen at Beth Israel Deaconess Medical Center. On May 12, 2014 and May 21, 2014, biopsies were performed. A diagnosis of glioblastoma was confirmed.

21. Mr. Ministeri was treated with a combination of radiation and chemotherapy from June 10, 2014 through July 23, 2014.

22. AECOM continued to pay Mr. Ministeri his salary for his continued work through and including August 8, 2014.

23. Under his contract with AECOM, Mr. Ministeri was required to work a minimum of twenty-four hours per week. Although the specific hours of work were not designated by AECOM, timesheets showing three eight-hour days per week were used by AECOM for payroll purposes.

24. At its inception, a large part of Mr. Ministeri's job was to have included travel. After the diagnosis of the cancer in his brain, it became impossible for him to travel on behalf of his employer. Nonetheless, at this point, he did not seek to go out on disability (under a Reliance Short Term Disability Policy which was in full force and effect). Instead, he fulfilled his responsibilities to his employer by working from home until August 8, 2014.

25. Unfortunately, on August 10, 2014, Mr. Ministeri suffered a thrombosis which left him unable to work regularly after that date. (At which point he went on Short Term Disability for 90 days, followed by Long Term Disability thereafter, both under the terms of Reliance's Disability Insurance Policies).

26. Mr. Ministeri's supervisor, Brian O'Kane, approved Mr. Ministeri's timesheets for the period from April 1, 2014 to August 8, 2014.

27. Mr. O'Kane explained his continual approving of timesheets as follows: "Anthony, once diagnosed did need treatments, which interfered with his ability to travel on the job. However, he worked from home during this timeperiod [sic]. He was able to maintain a part time schedule around his treatments and doctor's visits." "Anthony assisted on three critical proposal efforts. His main responsibility was to draft the strategy for implementation and staffing. The three proposals were the following:

    a. TIAA CREF Phase 2 Second Year costing model;

    b. GE CM cost model;

    c. Verizon CM cost model and scoping."

"He also reviewed numerous pricing models and staffing charts with me over the phone." (Exhibit 2).

28. Plaintiff, as Personal Representative of the Estate of Anthony Ministeri, made claim for payment of life insurance benefits by submitting to Reliance a "Proof of Loss Claim Statement Group Life/Accidental Death Insurance" form produced by Reliance, signed by the plaintiff on February 11, 2016, and siged by AECOM's Administrator on March 24, 2016. (Exhibit 3). Reliance's records indicate that this form was received by Reliance on April 11, 2016. The Life Insurance Policy issued to AECOM and written and administered by Reliance stated that payment of claims would be made once "proper proof" was received by Reliance. (Exhibit 4)

29. By letter dated July 8, 2016, Reliance gave notice to Plaintiff that the claim had been denied (Exhibit 5).

30. This initial denial of benefits by Reliance was based, among other factors, on the following allegations:

   a. No insurance was in force on the date of Mr. Ministeri's death;

   b. Mr. Ministeri's insurance terminated "no later than May 2, 2014…"

   c. "AECOM confirmed that Mr. Ministeri was unable to perform any work on or after August 8, 2014."

   d. "Peggy Larsen of AECOM confirmed that **"Mr. Ministeri was not able to or expected to perform his job at home…"** (Emphasis in original).

   e. "Mr. Ministeri himself reported to the Social Security Administration ( on January 16, 2015) that he stopped working because of his disabling condition on April 10, 2014. He further reported that the last day he worked as a "Sr. VP project engineer" was on April 10, 2014." (See Denial Letter dated July 8, 2016, Exhibit 5).

6

31. The assertion by Reliance that Mr. Ministeri's insurance terminated no later than May 2nd infers that it may have terminated sooner than May 2nd. This assertion is unsupported by fact. A de novo examination of the events involved in this matter will show that the assertion is incorrect. Furthermore, the assertion is incorrect, was made in bad faith, and is arbitrary and capricious, and in breach of the fiduciary duty owed to Mr. Ministeri by the Plan Administrator and its Claim Administrator, Reliance.

32. The assertion that Mr. Ministeri's employer confirmed he was unable to perform any work on or after August 8, 2014, should have been the end of the inquiry. The only possible interpretation of that statement is that, prior to August 8, 2014, Mr. Ministeri was able to perform work. However, because admitting the truth of this statement would have required the Plan and Reliance to pay life insurance benefits under the Policy, and in dereliction of the fiduciary duty to act in good faith, the Plan and Reliance went on to incorrectly, wrongly, arbitrarily and capriciously deny coverage.

33. The Plan Administrator and Reliance, as Claims Administrator, attempted to justify the wrongful denial of coverage in part because Mr. Ministeri incorrectly stated in his Social Security Disability Insurance application that he could not work after April 10, 2014. This statement by Mr. Ministeri is simply and obviously untrue, as is shown by the fact that the first real outward manifestation of his condition occurred on a business trip to New York City on May 2, 2014, where Mr. Ministeri was present as a representative of his employer. The Plan Administrator and Reliance, as Claims Administrator, knew at the time of writing the July 8, 2016, denial letter that Mr. Ministeri did not stop working on April 10, 2014.

34. Furthermore, Reliance, as Claims Administrator, knew at the time of writing the July denial letter, that the application for Social Security Disability Insurance ("SSDI") was

7

required by Reliance and was intended to benefit Reliance: Any amounts received from SSDI reduced the amount of Long Term Disability Benefits Reliance had to pay. Thus, in addition to the fact that the Plan Administrator and Reliance attempted to use a scrivener's error or simple mistake (that is, the date of April 10, 2014, contained in Mr. Ministeri's application for SSDI) by the decedent to deny life insurance benefits to his estate, this erroneous assertion was incorrect, made in bad faith and in breach of the duty of the Plan Administrator and Reliance and was compounded by the fact that both stood to gain financially from the allowance of the application for SSDI. As such, Reliance had a conflict of interest in making a decision to deny life insurance benefits to Mr. Ministeri's survivors. As such, any decision to deny benefits in this matter was plainly wrong and was made in an arbitrary and capricious manner.

35. Furthermore, as the Administrator of the Long Term Disability Policy for AECOM, Reliance (and by extension, AECOM, as the Plan Adminstrator of the Life Insurance Policy) knew or should have known that the successful application for Long Term Disability Benefits filed by Mr. Ministeri in the Fall of 2014 stated that the onset of disability was August 11, 2014. This implicates AECOM, as the Plan Administrator and Reliance, as Claims Administrator, in a further display of bad faith and breach of fiduciary duty in that, having commenced payment of Long Term Disability benefits approximately 90 days after August 11, 2014, they sought to avoid paying Life Insurance Benefits by attempting to push the onset of disability date back to April 10th or May 2nd (or, later, May 9th) of 2014, for the sole purpose of avoiding the payment of Life Insurance Benefits. Simply put, under the terms of the Life Insurance Policy, if the onset of disability occurred on August 11, 2014, Mr. Ministeri's life insurance policy was in full force and effect under its terms at the time of his death.

36. There could be no reasonable doubt on Reliance's part as to the dates on which Mr. Ministeri worked: On or about June 16, 2016, in response to an emailed question from Reliance, Peggy Larsen of AECOM stated that "Mr. Ministeri never dropped below 20 hours per week." In its email to Ms. Larsen, Reliance, through its Senior Vice President, Paul Botkin, had written "Trying to assist here. The date of dropping below 20 hours is going to be a pretty important and potentially deciding factor on this claimant as his SSDI application and the ER information do not match." (Exhibit 6).

37. On or about August 10, 2016, Peggy Larsen of AECOM's Benefits Department submitted to Reliance, as Claims Administrator, Mr. Ministeri's paystubs for the period from April 1, 2014 up through and including August 8, 2014. Along with the paystubs she submitted the email statement of Brian O'Kane concerning Mr. Ministeri's work during the time following May 2, 2014. (Exhibit 2).

38. Reliance's only response to the submission from Peggy Larsen was contained in an email from Peter Sailor, Assistant Vice President of Reliance:

"Peggy, should we consider this information as the appeal of our claim denial?"

"We just want to make sure that this is everything that will be submitted in conjunction with the appeal before we forward the information to our Quality Review area for handling (Quality Review handles the appeals of denied claims)."

39. Had the Plan Administrator and Reliance, as Claims Administrator, been acting in good faith, with due attention to their fiduciary duties, and without conflict of interest, the statement of Mr. O'Kane and the fact that Reliance and AECOM had previously accepted the onset of disability as having been in August of 2014 would have ended the matter: Life Insurance

9

Benefits would have been paid. However, Reliance and the Plan Administrator engaged in deliberate action to deny the Plaintiff the benefits rightfully due the decedent's estate.

40. Plaintiff timely appealed the July 8, 2016, denial of benefits by submitting a letter with attachments to Reliance from Attorney Mark J. Gardner on September 26, 2016. ( See Exhibit 7). In this letter, Attorney Gardner requested additional time to supplement his appeal due to the fact that, in response to his request to Reliance for decedent's records, Reliance had sent him another insured's medical records and other documents. Mr. Gardner requested additional time within which to obtain and review Mr. Ministeri's records from Reliance and supplement his appeal letter. Reliance acceded to this request, and, on November 21, 2016, Attorney Gardner submitted a supplemental letter with additional documents. (See Exhibit 8 ). The letters contained statements of the evidence supporting the Plaintiff's claim and summarizing the mistakes made by the Claims Administrator in reaching the decision to deny benefits.

41. On January 6, 2017, Reliance, acting as Claims Administrator for the Plan Administrator, gave notice to Plaintiff, by means of a letter addressed to Attorney Gardner, that her appeal was denied. (Exhibit 9).

42. In denying the Plaintiff's claim for life insurance benefits, and Plaintiff's appeal of the original denial, Reliance, as Claims Administrator, erroneously, improperly, knowingly, arbitrarily and capriciously, contrasted the statement of Brian O'Kane with that of another AECOM employee, Ms. Peggy Larsen, who – without consulting Brian O'Kane-had written to Reliance that Mr. Ministeri "was not able or expected to perform his job at home".

43. Mr. O'Kane was the direct supervisor of Mr. Ministeri at AECOM in Massachusetts.

44. Ms. Larsen is employed by AECOM at its corporate headquarters in California.

45. AECOM employed tens of thousands of people at the time that Mr. Ministeri was employed by AECOM.

46. Ms. Larsen's statement to Reliance was made without any personal knowledge on her part. At the time of her statement she had not spoken to Mr. O'Kane concerning the ability of Mr. Ministeri to work and the arrangements under which he was working during the period from and after May 2, 2014 up to and including August 8, 2014.

47. Notwithstanding Mr. O'Kane's statement, and notwithstanding Ms. Larsen's attempt to establish that Mr. Ministeri never worked fewer that 20 hours per week (Exhibit 6) and her later attempt to clarify her earlier unfounded statement, Reliance, as Claims Administrator, improperly, knowingly, arbitrarily and capriciously denied the claim for life insurance benefits based upon Mr. Ministeri's alleged inability and failure to work 20 hours (the policy's minimum required hours for coverage) per week between May 9, 2014 and August 8, 2014. In view of the statement of Mr. O'Kane, the only individual involved in the claim and appeal who had actual knowledge of what had occurred with regard to Mr. Ministeri's work between May 2, 2014 and August 8, 2014, the only reasonable fact-based decision that Reliance could have made was to allow benefits.

48. Taking the position that no benefits were due, in complete and total disregard of the facts presented by Mr. O'Kane, allowed Reliance, and by extension, the Plan Administrator, AECOM, to conveniently tailor the facts in such a way as to deny life insurance benefits to Mr. Ministeri:

11

a. If Plaintiff's claim that Mr. Ministeri worked until August 8, 2014 was accepted by Reliance, then life insurance benefits would have been due and payable under the Reliance policy because;

   i. During the period from August 8, 2014 up to and including the time of his death on October 2, 2015, Mr. Ministeri continued to pay the required premium for his Employee Life Insurance under the Reliance Policy;

   ii. After he ceased to work on or about August 8, 2014, Mr. Ministeri received both Short Term and Long Term Disability payments under the group disability policies issued and administered by Reliance.

   iii. In its approval of Mr. Ministeri's application for Long Term Disability benefits, Reliance identifies August 11, 2014 as the onset date of Mr. Ministeri's disability.

   iv. AECOM's records reflect that Mr. Ministeri's approved medical leave of absence began on August 11, 2014.

   v. By its own terms, the Reliance Life Insurance Policy provides, in the event of illness or injury, a twelve-month continuation of coverage under the following provision:

   > "Continuation of Individual Insurance: The insurance of an Insured may be continued by payment of premium, beyond the date the Insured ceases to be eligible for this insurance, but not longer than:
   >
   >   i. twelve (12) months, if due to illness or injury" (Exhibit 4).

   vi. Using the date of August 11, 2014, the continuation of coverage would have expired on August 11, 2015.

12

vii. By its own terms, the Reliance Life Insurance Policy provides a "Conversion Privilege", a sixty-day period after termination of coverage during which an individual may apply for an individual policy.

viii. The Conversion Privilege section of the policy provides that:

"D. If an Insured dies during the time provided in A above [sic] in which he/she is entitled to apply for an individual policy, we will pay the Benefit under the Group Policy that he/she was entitled to convert. This will be done whether or not the Insured applied for the individual policy." (Exhibit 4).

ix. Given the fact that Mr. Ministeri died on October 2, 2015, less than 60 days after the termination of coverage date of August 11, 2015, his estate is entitled to the benefits guaranteed under the Conversion Provision.

x. Based on the fact that Mr. Ministeri continued to pay the premiums due under the policy until the time of his death, it is clear that, had he been aware of the conversion privilege, he would have exercised it.

xi. Based on the fact that Mr. Ministeri continued to pay the premiums due under the policy until the time of his death, his estate and/or his designated beneficiaries are entitled to receive the benefits provided for under the Policy.

xii. Based on the fact that Mr. Ministeri continued to pay the premiums due under the policy until the time of his death, the defendant should be estopped from denying coverage under the policy.

  xiii. It was not until Portability Information was received by his Personal Representative after his death that anyone in the Ministeri family was made aware of this provision.

49. Reliance, as Claims Manager for the Plan Administrator, has taken the position in its denial of claimant's appeal that Mr. Ministeri ceased to be in an eligible class of beneficiaries (that is, one who works at least 20 hours per week) on or about May 2, 2014. This is clearly erroneous. On that day he was in New York City on a business trip. Clearly, he was performing his job on that date. This assertion is an artifact, left over from the string of "facts" set forth in the original denial letter of July 8, 2016. It was a canard in July of 2016 and a total misstatement of fact at the time of the Claims Administrator's denial of plaintiff's appeal in January of 2017, and at both times, another example of the Plan Administrator's and Claims Administrator's erroneous and arbitrary and capricious bad faith conduct in denying this claim.

50. Reliance erroneously concluded that during "time periods ending May 9, 2014, and May 16, 2014" Mr. Ministeri "clearly did not work 20 hours given the serious nature of his condition and diagnostic workup." Indeed, the fact that his employer paid him for these time periods is indicative of the fact that he did work his alotted 24 hours at some point during those weeks, and that his supervisor was content with his efforts. Reliance and the Plan Administrator, determined to deny benefits, start from a conclusion and then assume facts to support their conclusion. The real facts reflect that, despite his illness, Mr. Ministeri was devoted to performing the work he was capable of performing for the required time each week between May 2, 2014 and August 8, 2014. The record is also clear that his direct supervisor was satisfied with his efforts. Not only did he exceed the 20 hour per week requirement of the Reliance Life Insurance policy, he met the required minimum of 24 hours per week required by his employer.

14

51. May 7, 2014 fell on a Wednesday. May 12-13, 2014 fell, respectively, on a Monday and a Tuesday. There was plenty of time during both of these weeks when Mr. Ministeri could work and accumulate his required 24 hours of work.

52. Furthermore, under his Employment Agreement with AECOM, Ministeri was entitled to 20 days of Paid Time Off per year. As such, he was entitled to take days off by the time his medical treatment began. Therefore, the Plan Administrator and Claims Administrator are incorrect in asserting that, because he was absent from work on May 7th, May 12th, and May 13th, Ministeri automatically ceased to be eligible for lifer insurance benefits.

53. It is erroneous for the Plan Administrator, through its Claims Administrator, to conclude that Mr. Ministeri became inelegible for life insurance benefits as of May 2, 2014, since Reliance continued to accept life insurance premiums until the time of his death.

54. Furthermore, the form of the denial of benefits is imprecise and indefinite. Reliance states that the decedent's life insurance coverage "appears to have terminated on May 2, 2014." Then, following this ambiguous phrase, Reliance continues by saying "…and absolutely terminated as of the pay period ending May 9, 2014."

55. The Claims Administrator and the Plan Administrator cannot hedge their bets by picking two different (and incorrect) termination dates. Nor can an insurer base its determination of coverage on what "appears" to have happened. The Plan Administrator's and its Claims Administrator's attempt to avoid payment is imprecise, and therefore inconclusive. The defendants should be estopped from denying this claim based on imprecision and surmise. Their attempt to avoid their obligation is indicative of their intent to avoid paying life insurance benefits at any cost.

56. Had Mr. Ministeri been incapable of performing 24 hours per week during the period from May 2, 2014 to August 8, 2014, he would have been covered by Short Term Disability under the policy provided to AECOM by Reliance. Again, the fact of the matter is that he was capable of performing meaningful work satisfactory to his employer from home for the required number of hours under his employment agreement during this period. There is no factual basis to support the Claims Administrator's and the Plan Administrator's assertions that Mr. Ministeri was not working during this period.

57. Plaintiff respectfully suggests that the only reason for the Plan Administrator and Claims Administrator to assert that coverage ceased in May, 2014, is to deny benefits to Mr. Ministeri's beneficiaries.

58. Indeed, the single-minded purpose to deny benefits is clear from the calendar:

Knowing that Mr. Ministeri died in October, 2015, and calculating that this was within the period of the Conversion Privilege's applicability if he became disabled in August 2014, Reliance and the Plan Administrator went to great lengths to push the date of the onset of disability back to May of 2014 in an attempt to justify denial of coverage.

59. The defendants should be estopped from claiming that Mr. Ministeri's coverage and/or conversion privilege terminated prior to his death.

60. Reliance, as Claims Administrator, and AECOM, as the Plan Administrator, acted erroneously, arbitrarily and capriciously in denying the claim for life insurance benefits.

61. Reliance and AECOM acted in bad faith in denying the claim for life insurance benefits

62. Reliance's dual roles of Claims Administrator and insurer constitute a conflict of interest in that the denial of benefits to Mr. Ministeri's estate results in unjust enrichment to Reliance.

63. AECOM, as Plan Administrator, knew or should have known that the inherent conflict of interest of Reliance was inapposite to the best interests of the plan's participants.

64. Both Reliance and AECOM owed a fiduciary duty to the decedent.

65. Both Reliance and AECOM breached said duty to the decedent.

66. By denying benefits to the estate of Anthony Ministeri, Reliance avoids having to pay the insurance benefits due the said estate.

67. Reliance and AECOM's conduct in this matter was erroneous.

68. Reliance and AECOM's conduct in this matter was arbitrary and capricious.

69. On its face, the Policy indicates that the obligation to pay benefits is triggered when a policyholder dies and his representative submits proper proof. There is nothing in this language, which was formulated by Reliance, that makes the decision to pay benefits discretionary. As such, the Plaintiff is entitled to a de novo consideration of her claim.

70. Alternatively, if the Court finds that de novo examination of the case is not available, then the record adequately establishes the arbitrary and capricious nature of the conduct of the defendants so as to enable the Court to reverse the decision to deny benefits.

WHEREFORE, plaintiff prays this Honorable Court:

1. Find that the plaintiff is entitled to de novo review of the benefits denial;

2. Permit plaintiff to present evidence outside of the record at time of hearing and permit the conducting of such discovery as may be necessary, including depositions, to allow her to prove her case;

3. Alternatively, if the Court does not find that the plaintiff is entitled to have her claim examined de novo, that the Court find the defendants herein acted in an arbitrary and capricious manner in the denial of her claim;

4. In any event, that the Court order the defendants to give her the value of the life insurance policy together with costs of the action plus attorneys' fees and costs.

        Respectfully submitted,

        The plaintiff,
        RENEE MINISTERI,
        Personal Representative of the Estate of
        Anthony Ministeri,

        By her Attorneys,

        /s/Richard J. Sullivan
        Richard J. Sullivan, BBO# 554085
        Eugene F. Sullivan, Jr., BBO# 485720
        SULLIVAN & SULLIVAN, LLP
        83 Walnut Street
        Wellesley, MA  02481
        (781) 263-9400
        rsullivan@sullivanllp.com
        gsullivan@sullivanllp.com

Dated:   March 28, 2018