# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
RENEE MINISTERI,                                        )
Personal Representative of the Estate of                )
Anthony Ministeri,                                      )
       Plaintiff,                                       )
                                                        )
v.                                                      )  C.A. N0. 1:18-cv-10611- LTS
                                                        )
AECOM TECHNOLOGY CORPORATION,                           )
RELIANCE STANDARD LIFE INSURANCE                        )
COMPANY,                                                )
       Defendants                                       )
_____)

**PLAINTIFF'S, RENEE MINISTERI, PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY MINISTERI, MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

On May 2, 2014, while on a business trip to New York City, Anthony Ministeri became disoriented, and was unable to find his hotel. Upon returning to his home in Merrimac, Massachusetts, he sought medical attention and underwent a CT scan on May 7, 2014. The scan revealed a lesion in his brain and Mr. Ministeri was referred to Beth Israel Hospital in Boston for more testing. On May 12, 2014 and May 21, 2014, biopsies were taken which revealed the presence of a glioblastoma. Mr. Ministeri underwent a dual course of radiation and chemotherapy commencing on June 10, 2014 and ending on or about July 23, 2014. During that time he continued to work.

Mr. Ministeri was working for AECOM in its Construction Services Business Line. His job title was "Market Sector Regional Executive – Industrial and Process Industries" and he had started working for AECOM on April 1, 2014. He was working part-time, 24 hours per week and his annualized salary was $ 156,000.00.

Mr. Ministeri's Job Description stated that he would be expected to travel up to 90 percent of the time, however, the Job Description also stated that:

> *"The aforesaid responsibilities are **representative** in nature. Nothing here shall preclude Employer from changing or **eliminating any of these duties**. [sic] from time to time, or from assigning comparable duties or other duties commensurate with the experience and background of Employee."*

(Exhibit 2, at AR210. Italics in original).

Mr. Ministeri was not able to travel after his diagnosis. However, he continued to work from home on a part-time basis with the approval of his supervisor, who said Mr. Ministeri performed valuable work for AECOM during the period from the time of his diagnosis up through and including August 8, 2014. In an email dated July 13, 2016, his direct supervisor, Brian O'Kane, Executive Vice President, Construction Services of AECOM stated:

> "As Anthony Ministeri's manager, for the time period of April 1, 2014 – August 8,2014, I did approve his timesheets. Anthony, once diagnosed did need treatments, which interfered with his ability to travel on the job. However, he worked from home during this timeperiod [sic]. He was able to maintain a part time work schedule around his treatments and doctor's visits.
>
> Anthony assisted on three critical proposal efforts. His main responsibility was to draft the strategy for implementation and staffing. The three proposals were the following:
>
> TIAA CREF Phase 2 second year costing model.
> GE CM cost model.
> Verizon CM model execution and scoping.
>
> He also reviewed numerous pricing models and staffing charts with me over the phone."

(Exhibit 4, AR1044).

In addition to Mr. O'Kane's statement, the medical records of Mr. Ministeri attest to the fact that he was working from home after his diagnosis. On July 31, 2014, Dr. Collins, one of Mr. Ministeri's physicians, noted that Mr. Ministeri: "…also explained that he would like to return back to work. He has been doing some work from home online, but now he is hoping to become a

bit more active, not fulltime, but this would require him to fly and a lot of his work would be on the West Coast, because of potential increased pressure in the brain I asked him to make sure he addresses this with Dr. Oman…" (Exhibit 6, AR 215).

Mr. Ministeri worked until August 8, 2014. On or about August 10, 2014, Mr. Ministeri suffered a thrombosis. He never returned to work and he died on October 2, 2015. As part of his employment package, AECOM provided Mr. Ministeri with health, short-term disability ("STD"), long-term disability("LTD"), and life insurance. STD, LTD, and life insurance were all provided to him by the defendant, Reliance. Mr. Ministeri's group life insurance coverage totaled $624,000.00, representing four times his annual salary of $156,000.00. He elected additional coverage of $468,000.00 through Reliance, for which he paid a separate premium, initially through payroll deduction and later by direct payment to AECOM.

Mr. Ministeri was paid his regular salary by AECOM through August 8, 2014. He received Disability Insurance payments thereafter, until the time of his death. Mr. Ministeri was entitled to continue his benefits upon payment of premiums during his disability. He was provided with payment coupons by AECOM which reflected the amounts due for health, STD, and Life Insurance. These payments were made up through and including the time of his death.

After his death, Mr. Ministeri's wife, Renee, was appointed as Personal Representative of his Estate. In early 2016 she completed the necessary paperwork provided by AECOM to make claim for benefits under Mr. Ministeri's Life Insurance.

The terms of the Life Insurance coverage applicable to Mr. Ministeri provided that an employee of AECOM was entitled to coverage for one year from the date of the end of his employment. At the expiration of the year, the employee was entitled to a 60-day portability period. Essentially, an employee's life insurance was in effect for fourteen months after he or she stopped

working, provided that premiums were paid. Payments were made for Mr. Ministeri's life insurance coverage up through and including the date of his death.

From August 8, 2014 to his death, all premiums were paid to keep his coverage in force. Thus, he was insured for one year (until August 8, 2015), plus the portability period (sixty days). This means that his life insurance benefits were in effect as of his death on October 2, 2015.

In denying the claim for life insurance benefits Reliance took the position that Mr. Ministeri ceased to be covered under the Plan as of May 2, 2014, the day of his incident in New York City. As such, Reliance erroneously concluded that Anthony Ministeri ceased to be covered as of May 2, 2015, or, at the latest, May 9, 2014. (Exhibit 10, AR0119-AR123, Exhibit 11, AR0133-AR0138). In order to deny coverage to the Estate of Anthony Ministeri, Reliance chose to disregard, or failed to consider, all facts and contractual provisions which would have resulted in payment of Life Insurance Benefits in the amount of $1,092,000.00 to the Estate.

## **STANDARD OF REVIEW**

"The default standard for reviewing [ERISA] benefits decisions also is *de novo*, and plenary review is displaced only if the benefit plan gives discretionary authority to the administrator or fiduciary to determine eligibility for benefits." *Gross v. Sun Life Assur. Co. of Canada,* 734 F.3d 1, 11 (1st Cir. 2013), citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,109 S. Ct. 948, 954 (1989). Because there is no language in the subject policy (Exh. 14) unambiguously granting discretionary authority to the fiduciary, the standard of review in this case is *de novo*.

As *Firestone* makes clear, where there is a dispute over the meaning of plan language, no deference is given to the administrator's interpretation of the plan language." *Orndorf v. Paul*

*Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005). Rather, the court interprets the plan *de novo*, and applies the normal rules for contract interpretation. *Id*.

As set forth in *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19 (1st Cir.2003), "in an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion . . . to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005). "This means the non-moving party is not entitled to the usual inferences in its favor" and the court will conduct a *de novo* review of the facts.

### Structural conflicts

A structural conflict exists in any ERISA case where the claims administrator "…is in the position of both adjudicating claims and paying awarded benefits." Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3rd 1 (1st Cir. 2005). Reliance is in just such a position in this case, and has a financial interest in denying the claim for benefits. Such an inherent conflict of interest warrants closer scrutiny by a reviewing court. (Denmark, 566 F.3rd at 9). Courts are duty bound to inquire into what steps a plan administrator has taken to "insulate the decision-making process against the potentially pernicious effects of structural conflicts." (Id., at 9). There is nothing contained in the Administrative Record in this case to reflect any processes or procedures used by Reliance to blunt or avoid the potential effect of the structural conflict.

### ARGUMENT

Mr. Ministeri was hired by AECOM as a part-time employee to work in the construction services division in 2014. He was an active employee who was working 24 hours a week from his home between May 9, 2014 and August 8, 2014, at which time he suffered a disabling event. Prior to August 8, 2014, he worked regularly, was paid his usual salary, turned in regular

timesheets, and was considered an active employee by his supervisor. From August 8, 2014 until his death, Mr. Ministeri was on disability and on a leave of absence from his employer under the Family & Medical Leave Act. During the entire time period, his insurance premiums were continuously paid. After accepting premiums and never giving notice of a terminating event, Reliance waited until Mr. Ministeri died, then denied coverage under his life insurance policy. Reliance contends that when it reviewed Mr. Ministeri's original job description upon receiving the claim, it unilaterally decided that Mr. Ministeri employer did not allow him to work from home, and thereby declared him to be outside of the Eligible Class and retroactively not entitled to coverage.

In making this determination, Reliance erred: (1) by erroneously and wrongly interpreting the language of the policy, and specifically, the term "active", in the way most likely to deny benefits owed to the beneficiary, but against all rules of contract interpretation; and (2) by, without notice, going outside the express terms of the policy to examine and erroneously interpret the language of decedent's job description for the sole purpose of denying benefits, all while ignoring the language of the job description that stated it was "representative in nature" and subject to employer's right to change or eliminate or assign comparable duties.

### I.     RELIANCE'S INTERPRETATION OF THE POLICY LANGUAGE IS ERRONEOUS AND HAS BEEN EXPRESSLY REJECTED BY MULTIPLE FEDERAL COURTS INTERPRETING THE SAME LANGUAGE.

ERISA's purpose is, in part, "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. 29 U.S.C. § 1001(b). In support of that purpose, a

beneficiary may bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of ERISA or the terms of the plan or to enforce those provisions or terms.

An ERISA plan should be interpreted "under ordinary principles of contract law" and "[w]here a term is ambiguous, we must construe it against the drafter, and in accordance with the reasonable expectations of the insured." See *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Wheeler v. Dynamic Eng'g Inc.,* 62 F.3d 634, 638 (4th Cir.1995); *Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 375 (4th Cir. 2000).

In this case, the insurance policy defines class eligibility according to its eligibility provision:

ELIGIBLE CLASSES: Each Active Full-time and Fixed Part-time Corporate Vice President and above of AECOM Technology Corporation (hereinafter referred to as the Participating Unit, or as "you", "your" or "yours" where applicable), under Participating Unit Number GL 151836, effective January 1, 2014, as amended through June 1, 2014, except any person employed on a temporary or seasonal basis.
Exh. 14, at 0007.

The policy further defines "Full-time" or "Part-time" employee as someone "working for [employer] for a minimum of 20 hours during a person's regularly scheduled work week." *Id*., at AR0009.

Therefore, the policy provides coverage for an employee if the employee is "active" and works a minimum of 20 hours during the employee's regularly scheduled work week as Mr. Ministeri did during the relevant time period. Defendant Reliance, however, denied coverage because it erroneously claims Mr. Ministeri was not "active" under the terms of the eligibility provision because his original job description included a reference to traveling 90% of the time. When Mr. Ministeri ceased being able to travel, Reliance claims his 24-hour-work-week from home made him ineligible for benefits and took him outside the Eligible Class as of May 9, 2014, the approximate date he began working from home.

### A. Reliance misinterpreted Mr. Ministeri's job description and the meaning of "active."

In making this decision, Reliance relied upon the language of his job description that they claim favored their ultimate determination, i.e. the description of traveling "90 percent" of the time, and ignored the language that did not favor a denial. Specifically, Reliance took no notice of the language that said the aforementioned job responsibilities are "representative in nature" and **may be changed or eliminated or comparable duties may be assigned at any time** by the employer. (Exhibit 2, at AR210. Italics in original).

But even before going to his job description, Reliance made an even more fundamental error by misinterpreting the word "active" in the eligibility clause. The definition of "active" in that clause is not defined in the policy, nor does the policy provide criteria for determining when an employee is "active", but in order to deny the claim, Reliance in its denial letter wrongly claimed that the policy's definition of "actively at work" and "active work" must be read into the clause. The "actively at work/active work" clause means:

> the person actually performing on a Fulltime or Part-time basis each and eve111 duty pertaining to his/her job in the place where and the manner in which the job is normaly performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.
>
> Exh. 11 (Policy), at 0136.

Other federal courts have expressly rejected Reliance's interpretation of this language for the same reason that it should be rejected here, i.e. Reliance's interpretation is contrary to the intent and language of the policy. *Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 374 (4th Cir. 2000); *Nor-Cote, Inc. v. Reliance Standard Life Ins. Co.*, No. 18-CV-13051, 2019 WL 2022182, at *2 (E.D. Mich. May 8, 2019); *Carlile v. Reliance Standard Ins. Co.*, 385 F. Supp. 3d 1180, 1184 (D. Utah 2019);

In *Tester*, the Fourth Circuit addressed the issue of whether a claimant is an "active, Full-time employee" even though they may not meet the minimum hourly work week requirement set forth in the policy's definition of "full time". 228 F.3d 372, 374. That policy's defined "Eligibility": Each active, Full-time and Part-time employee, except any person employed on a temporary or seasonal basis." *Id*. The policy did not include a definition for "active," but defined a "Full-time" employee as one who works "a minimum of 20 hours during [the] person's regular work week." *Id*. at 374-75. During the coverage period of the policy, Mrs. Tester took a leave of absence from her work for health-related reasons and several weeks later was killed in a car accident. *Id*. Reliance denied her husband's claim on the policy, finding Mrs. Tester was not in the eligible class as an "active, Full-time employee" because "she had been absent for several weeks and never fulfilled the minimum hourly requirement." *Id*.

Mr. Tester challenged Reliance's determination in federal district court, and the district court found the policy's term "active" in the eligibility provision to be vague and ambiguous. *Id*. at 375. The court ruled that "*Reliance improperly denied Mr. Tester benefits because Mrs. Tester was an 'active' employee under the policy's terms and entitled to coverage as of the date of her death*." *Id*. (emphasis added). Reliance appealed, arguing that "any ambiguities in the eligibility provision are cured by the phrase 'Full-time' " because "the policy defines 'Full-time' as requiring an employee to work a minimum of 20 hours during the employee's regularly scheduled work week in order to qualify for the class eligible insurance." *Id*.

On appeal, the Fourth Circuit rejected Reliance's reading of the policy. The Fourth Circuit first concluded that the term "active" was ambiguous because the policy "neither defines 'active,' nor provides a criteria for determining when an employee is 'active.' " *Id*. at 375-76. The court

also found Reliance's reading did not cure the vague and ambiguous nature of the eligibility provision:

> [Under Reliance's] interpretation of the policy . . . **every time an employee calls in sick with a cold or leaves work early with a headache, or stays home with the flu, or a thousand other legitimate ailments, that employee's insurance coverage would terminate because the employee was no longer "active." Such an interpretation, however, would lead to absurd results outside of the insured's reasonable expectations**. An employee reasonably would expect his coverage to extend beyond the time periods that he is physically at work and to cover those hours and days when he is out of the plant due to an illness. Reliance's construction of the term "active" does not eliminate the ambiguity of the eligibility provision because it unreasonably restricts coverage to the time that an employee is actually at work.

*Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 376 (4th Cir. 2000).

### B.  Mr. Ministeri's Employer and Mr. Ministeri Himself Considered His Employment to be "Active."

At all times between May 2, 2014 and August 10. 2014, Mr. Ministeri and his employer considered him to be an active employee and there is no indication to the contrary.  Mr. Ministerei (1) continued to receive paychecks, (2) continued to file timesheets each week, (3) continued to actively participate and work on the issues assigned to him by his supervisor, (4) all of his premium payments continued to be paid out of his paychecks, (5) and Reliance took premiums from Mr. Ministeri every month through August 10, 2014, and then through his death in October 2015.  The court in *Tester* found such facts to be "of considerable weight" of an employee's "active" status.

> We note that in the case of *Canada Life Assurance Co. v. Estate of Lebowitz,* 185 F.3d 231 (4th Cir.1999), a case in which the employer was the administrator, as here, the court properly took account of the fact that the premiums on the insurance in question had been paid through the time when the insurance company defaulted on giving notice of conversion. *Canada Life Assurance Co. v. Estate of Lebowitz,* 185 F.3d at 236. Indeed, *Lebowitz* held that the payment of the premiums on behalf of the employee was conclusive evidence that the employer considered the employee covered under the policy. . . . [W]are of opinion that this is evidence of some considerable weight in the case and is not sufficiently disputed by the claim now made that the premiums were paid by mistake, which contention indeed is supported by little or nothing more than argument.

*Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 377 (4th Cir. 2000)

II. **THE POLICY DOCUMENTS FAIL TO INFORM PARTICIPANTS THAT THEIR CLAIM CAN BE DENIED IF THEIR JOB DESCRIPTION CHANGES OR THEIR JOB LOCATION CHANGES**.

ERISA requires that a summary plan description contain "the plan's requirements respecting eligibility for participation and benefits; . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . ." 29 U.S.C. § 1022(b). See also 20 C.F.R. § 2520–102–2(b) ("The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception[s], limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant ....").

The ERISA plan in this case includes the following definitions:

**ELIGIBLE CLASSES:** Each Active Full-time and Fixed Part-time Corporate Vice President and above of AECOM Technology Corporation (hereinafter referred to as the Participating Unit, or as "you", "your" or "yours" where applicable), under Participating Unit Number GL 151836, effective January 1, 2014, as amended through June 1, 2014, except any person employed on a temporary or seasonal basis.

Exh. 14, at AR0007.

**"Part-time"** is defined as "working for you for a minimum of 20 hours during a person's regularly scheduled work week." *Id*., at AR0009.

Nowhere in the ERISA plan does it state that a member of the ELIGIBLE CLASS shall cease to be a member of the ELIGIBLE CLASS if their job description changes, yet that is the determination of the administrator in this case. The meaning of "part-time" is also unequivocal. A part-time worker is a participant who works for the company "for a minimum of 20 hours during a person's regularly scheduled work week." There is no dispute that Mr. Ministeri remained employed through August 8, 2014, while working 24-hours a week on behalf of his employer.

Mr. Ministeri's supervisor has confirmed this. Exh. 2. The only change in his employment between May 2, 2014 and August 8, 2014 is that Mr. Ministeri worked all of his part-time hours from home. Nothing in the ERISA plan states that a participant shall become ineligible if they work from home.

If Reliance intended to limit life insurance benefits to only those employees whose job descriptions remained exactly the same throughout their employment, the policy was required to say so. It did not. If Reliance intended to deny life insurance benefits to part-time workers who worked from home, the ERISA plan was required to say so. It did not. A determination that is not accordance with the ERISA plan is by definition arbitrary and capricious. *Cheever v. John Hancock Mut. Life Ins. Co.,* 206 F. Supp. 2d 155, 163 (D. Mass. 2002). Reliance has steadfastly refused to consider the evidence presented by Plaintiff, including the statement from Mr. Ministeri's employer confirming Mr. Ministeri was a part-time worker through August 8, 2014. "[O]bstinacy in error is the soul of capriciousness." *Id*.

## CONCLUSION

Based on the foregoing, Plaintiff Renee Ministeri , as Personal Representative of the Estate of Anthony Ministeri , prays this Honorable Court order Reliance Standard Life Insurance Company to pay the Life Insurance Benefits of $1,092,000.00, together with interest, costs, and attorneys' fees.

Respectfully submitted,

The Plaintiff,

RENEE MINISTERI,

Personal Representative of the Estate of

Anthony Ministeri,

By her Attorneys,

/s/Richard J. Sullivan

Richard J. Sullivan, BBO# 554085
Eugene F. Sullivan, Jr., BBO #485720
SULLIVAN & SULLIVAN, LLP
83 Walnut Street
Wellesley, MA 02481
(781)263-9400
**rsullivan@sullivanllp.com**
**gsullivan@sullivanllp.com**

**Dated: May 1, 2020**