UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RENEE MINISTERI, *Personal Representative of the Estate of Anthony Ministeri*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil No. 18-10611-LTS |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES (DOC. NO. 59) AND DEFENDANT'S MOTION TO STRIKE (DOC. NO. 71)

July 21, 2021

SOROKIN, J.

On February 10, 2021, the Court granted judgment in favor of Plaintiff Renee Ministeri in the amount of $1,092,000. Mrs. Ministeri then submitted a timely request for prejudgment interest, costs, and attorneys' fees. Doc. No. 59. Defendant Reliance Standard Life Insurance Company has opposed the request for fees, Doc. No. 67, and Mrs. Ministeri has replied, Doc. No. 70. Reliance has moved to strike Mrs. Ministeri's Reply, Doc. No. 71, which Mrs. Ministeri opposes, Doc. No. 72. For the reasons which follow, Mrs. Ministeri's Motion for Attorneys' Fees (Doc. No. 59) is ALLOWED IN PART and DENIED IN PART as detailed herein. Reliance's Motion to Strike (Doc. No. 71) is DENIED.

I.  BACKGROUND

Anthony Ministeri passed away on October 2, 2015. Doc. No. 57 at 3. In April 2016, Plaintiff Renee Ministeri submitted a claim for the proceeds of the life insurance policy issued to

her husband by Reliance. Id. at 6. Reliance denied Mrs. Ministeri's claim in a letter dated July 8, 2016 and upheld its initial determination upon appeal in a final decision letter dated January 6, 2017. Id. at 6–7. In both letters, Reliance took the position Mrs. Ministeri was not entitled to recover because her husband had ceased to be an "Active . . . Fixed Part-time" employee, as required for coverage under the Group Policy purchased by his employer, some amount of time prior to his death. Id.

Mrs. Ministeri filed suit on March 29, 2018, primarily alleging wrongful denial of benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). In briefing on the parties' cross motions for summary judgment, Reliance defended its initial rationale for denying Mrs. Ministeri's claim for benefits and also advanced several new rationales, including the argument that Mrs. Ministeri's husband had failed to qualify for the supplemental portion of his life insurance policy (worth $546,000) due to his alleged failure to provide a certain form of notice as required by the relevant provisions of the Group Policy. The Court ruled against Reliance, holding inter alia that Mr. Ministeri had remained an "Active . . . Fixed Part-time" employee throughout the relevant period and that Reliance was barred from raising Mr. Ministeri's alleged failure to provide notice due to the insurer's own failure to raise this issue during the administrative proceeding. So holding, the Court awarded judgment accordingly.

Mrs. Ministeri now moves for prejudgment interest, costs, and attorneys' fees. Reliance opposes Mrs. Ministeri's Motion and, separately, has moved to strike Mrs. Ministeri's Reply in support of her Motion for Attorneys' Fees. Both motions are fully briefed and ripe for disposition.

II.     DEFENDANT'S MOTION TO STRIKE (DOC. NO. 71)

Reliance argues Mrs. Ministeri's Reply in support of her Motion for Attorneys' Fees ought to be struck because her Reply (1) is untimely, (2) adds new arguments, and (3) was filed without leave. The Court disagrees. Neither the Court's Local Rules nor this Session's Standing Orders impose a deadline by which replies must be filed. The Court has reviewed the filing and all the arguments therein are in response to issues raised in Reliance's Opposition. Had Reliance truly felt prejudiced by Mrs. Ministeri's Reply then Reliance could have sought to file a Sur-Reply, either in lieu of the Motion to Strike or as an alternative form of relief requested in the Motion to Strike, which the Court would have allowed. True, Mrs. Ministeri's Reply was submitted without leave, in violation of Local Rule 7.1(b)(3). But striking the filing at this stage would do little to "secure the just, speedy, and inexpensive" resolution of this litigation. Fed. R. Civ. P. 1.

For these reasons, Reliance's Motion to Strike (Doc. No. 71) is DENIED.

III. PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST, ATTORNEYS' FEES, AND COSTS (DOC. NO. 59)

Mrs. Ministeri, in her Motion, seeks (A) prejudgment interest in the amount of 12 percent per annum, (B) attorneys' fees in the amount of $123,850, and (C) costs of $426.73. The Court takes each request in turn.

A. Prejudgment Interest

Mrs. Ministeri asks the Court to award her the Massachusetts statutory prejudgment interest rate of 12 percent per annum from the date her claim was first denied. Reliance does not object to an award of prejudgment interest but argues a lesser award is more appropriate. Specifically, Reliance suggests that the Court award Mrs. Ministeri prejudgment interest at the average of the federal prime rate (approximately 4.5 percent per annum) from the filing of the Complaint through to the date of judgment.

In ERISA cases, district courts have broad discretion over whether to grant prejudgment interest. Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 223 (1st Cir. 1996), abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010); accord Enos v. Union Stone, Inc., 732 F.3d 45, 50 (1st Cir. 2013). "This judicial discretion encompasses not only the overarching question—whether to award prejudgment interest at all—but also subsidiary questions that arise after the court decides to make an award, including matters such as the period and rate to be used in calculating interest." Cottrill, 100 F.3d at 223 (citing Smith v. Am. Int'l Life Assurance Co., 50 F.3d 956, 958 (11th Cir. 1995)).

1.  *Date of Accrual*

Mrs. Ministeri argues prejudgment interest ought to accrue from the date of Reliance's first denial letter (July 8, 2016) while Reliance argues it ought to run from the date Mrs. Ministeri filed her Complaint (March 29, 2018). The Court disagrees with both proposals and holds that prejudgment interest ought to accrue from the date Reliance issued its final decision letter denying Mrs. Ministeri's claim (January 6, 2017).

The First Circuit has explained that, barring unusual circumstances, prejudgment interest in ERISA cases should normally run from the date a plan participant's claim accrued. Cottrill, 100 F.3d at 223 ("Ordinarily, a cause of action under ERISA and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits."); see also Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Tr., 191 F. Supp. 2d 223, 234 (D. Mass. 2002) ("In most ERISA cases . . . the accrual date [for purposes of prejudgment interest] is simple: the date when benefits were denied." (emphasis in original)). "A participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial." Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105 (2013). Here, that final denial was issued

4

when Reliance released its decision letter on appeal, whereupon Mrs. Ministeri's ERISA claim accrued. There is no evidence in the record suggesting Reliance unnecessarily delayed its final decision or otherwise prolonged the administrative process. Similarly, the record does not demonstrate that Mrs. Ministeri unreasonably delayed filing suit in this case. Thus, prejudgment interest should run from the date of Reliance's final denial. See Cottrill, 100 F.3d at 223 (affirming district court's decision to grant prejudgment interest from the date plaintiff's ERISA claim accrued).

For these reasons, the Court awards Mrs. Ministeri prejudgment interest for the period between January 6, 2017 and the date of judgment.

### 2. *Rate of Interest*

As already noted, Mrs. Ministeri seeks the Massachusetts statutory rate of prejudgment interest (12 percent) while Reliance suggests that an average of the federal prime rate (approximately 4.5 percent, according to Reliance) is appropriate. The Court concludes that neither rate is appropriate and instead awards the average federal prime interest rate for the relevant period plus three percentage points.

District courts enjoy "broad discretion" in determining what rate of prejudgment interest to award in ERISA cases. Cottrill, 100F.3d at 225. "In exercising that discretion, courts should consider the general purposes of prejudgment interest, as well as ERISA's twin goals of making claimants whole and preventing unjust enrichment by administrators or fiduciaries who wrongfully withhold benefits." Radford Tr. v. First Unum Life Ins. Co. of Am., 321 F. Supp. 2d 226, 252 (D. Mass. 2004), rev'd in part on other grounds 491 F.3d 21 (1st Cir. 2007) (citing Cottrill, 100 F.3d at 224 (indicating courts ought to consider "ERISA's remedial objectives [of] making a participant whole for the period during which the fiduciary withholds money legally

5

due" and "prevent[ing] unjust enrichment")). "Although federal courts sometimes have looked to state rates for guidance, they have done so as a matter not of compulsion, but of discretion." Cottrill, 100 F.3d at 225 (citation omitted); see also McCarron v. Deloitte LLP, No. 15-CV-10243-IT, 2020 WL 3412576, at *3 (D. Mass. Mar. 6, 2020). District courts have also looked to other sources for guidance, such as the federal statutory rate of interest, see Cottrill, 100 F.3d at 100, and the federal prime interest rate, see Smith v. Jefferson Pilot Fin. Ins. Co., No. CIV.A. 07-10228-PBS, 2010 WL 818788, at *3 (D. Mass. Mar. 5, 2010). Generally speaking, "a court cannot go wrong by using the federal rate, but a court has the discretion to use a state rate, especially if that rate approximates the likely return on the funds withheld." Laurenzano, 191 F. Supp. 2d at 236.

Here, the Court is unconvinced that the Massachusetts statutory rate of 12 percent accurately reflects the rate of return Mrs. Ministeri would have achieved but for Reliance's wrongful denial of her claim. Mrs. Ministeri's reference to the Dow Jones Industrial Average's realized rate of return over the relevant period is unconvincing as it fails to account for the ex-ante risk associated with such investments. And Mrs. Ministeri, despite her efforts, has failed to establish to the Court's satisfaction the rate of return Reliance enjoyed from its wrongful use of her funds. On the other hand, the Court is also unsatisfied with Reliance's proposal, as the federal prime interest rate is only offered to the most trusted of borrowers and therefore understates actual market conditions.

For these reasons, and given the unique facts of this case, the Court awards prejudgment interest at the average federal prime interest rate for the relevant period plus three percentage points, compounded annually.

    3.    *Conclusion*

Accordingly, the Court awards Mrs. Ministeri prejudgment interest for the period between January 6, 2017 and the date of judgment at the average federal prime interest rate for that period plus three percentage points, compounded annually.

B.     Attorneys' Fees

Mrs. Ministeri seeks $123,850 in attorneys' fees. In support, she has submitted affidavits from attorneys Eugene Sullivan, Richard Sullivan, and Teresa Monroe detailing their hourly rates and averring that they collectively spent 266.1 hours litigating Mrs. Ministeri's claim. See Doc. Nos. 60-5, 60-6, 60-7. Reliance opposes Mrs. Ministeri's request for fees and, in the alternative, argues Mrs. Ministeri is entitled to a lesser fee award.

1.     *Entitlement to Attorneys' Fees*

Generally, under the "American Rule," each side must pay its own litigation expenses. Hardt, 560 U.S. at 252–253. Section 502(g)(1) of the ERISA statute, however, provides:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §1132(g)(1).

This provision has been interpreted as providing district courts with the discretionary authority to award attorneys' fees to a party that has achieved "some success on the merits." Hardt, 560 U.S. at 256. However, this "discretion is not standardless." Cottrill, 100 F.3d at 225. Rather, the First Circuit has set forth a flexible five factor test (the "Cottrill factors") to channel the Court's analysis. These are:

i. The degree of culpability or bad faith attributable to the losing party;

ii. The depth of the losing party's pocket, i.e., his or her capacity to pay an award;

7

iii. The extent (if at all) to which such an award would deter other persons acting under similar circumstances;

iv. The benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and

v. The relative merit of the parties' positions.

Cottrill, 100 F.3d at 225. Reliance concedes that Mrs. Ministeri has achieved "some success on the merits." Doc. No. 67 at 3. The Court therefore turns to consideration of the Cottrill factors.

**i. Bad Faith or Culpability.** This factor cuts in favor of an award. Although the Court does not find that Reliance acted with bad faith in denying Mrs. Ministeri's claim, there are reasons to conclude that Reliance's conduct nonetheless reflects some level of culpability. Reliance's denial decision rested upon an interpretation of its Group Policy which has been rejected by every court to consider the question. See Doc. No. 57 at 10–14 (reviewing other cases construing similar policy language). And the insurance company's decision letters inappropriately focused on a handful of facts supporting denial while discounting "considerable evidence," id. at 14, in the administrative record indicating Mr. Ministeri had been insured on the date of his death. Moreover, the insurer's conduct in the course of litigating Mrs. Ministeri's claim fell short of the standards expected of a fiduciary. See generally Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008) (noting ERISA "imposes higher-than-marketplace quality standards on insurers," requiring administrators to perform their duties "'solely in the interests of the participants and beneficiaries' of the plan" (quoting 29 U.S.C. § 1104(a)(1))). For example, during summary judgment briefing Reliance inappropriately advanced rationales for denying Mrs. Ministeri's claim which it had not raised in the administrative proceeding. And Reliance advanced arguments at the hearing on the parties' cross motions for summary judgment which

had not appeared in its briefs and which, at points, contradicted positions the company had previously taken. Reliance's conduct in this regard significantly increased the complexity—and the cost—of this litigation.

**ii. Ability to Pay.** This factor cuts in favor of a fee award as Reliance agrees that it has the financial ability to satisfy any such award. Doc. No. 67 at 5.

**iii. Deterrence.** This factor also cuts in favor of an award. Reliance's denial of Mrs. Ministeri's claim rested, in part, on an interpretation of its Group Policy which has been consistently rejected by courts across the country. See Doc. No. 57 at 10–14. Awarding fees serves the interest of deterrence because, to borrow the words of another court, "such an award might cause insurance companies, including Reliance, to be more thorough in making their initial determinations to either grant or deny benefits." Cox v. Reliance Standard Life Ins. Co., 179 F. Supp. 2d 630, 634 (E.D. Va. 2001).

**iv. Common Benefit.** This factor cuts neither for nor against an award. On the one hand, resolution of this case required the Court to consider (and reject) an interpretation of Reliance's Group Policy which the insurer has continued to press in various proceedings. Thus, Mrs. Ministeri's claim has aided other plan participants in the sense that it has further clarified the meaning of the eligibility language of Reliance's Group Policy. See Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73, 85 (1st Cir. 2014) (explaining plaintiffs who secure greater legal clarity provide some benefit to plan participants). On the other hand, Reliance's interpretation of its policy language has been rejected several times before, meaning that the benefit of the Court's guidance was limited. Moreover, the relief secured by Mrs. Ministeri (the proceeds of her husband's life insurance policy) is of no benefit to the plan participants as a whole.

**v. Relative Merit of the Parties' Positions.** This factor cuts in favor of an award as Mrs. Ministeri has secured a judgment for more than one million dollars, clearly triumphing on the merits. Reliance's citation to Gross is inapposite as, in that case, the plaintiff failed to establish her entitlement to benefits, securing only remand, and the First Circuit rejected one of the plaintiff's primary contentions. See Gross, 763 F.3d at 85. Here, in contrast, Mrs. Ministeri secured complete relief and favorable rulings on each of the issues raised.

**vi. Conclusion.** Having determined that four of the five Cottrill factors favor an award, the Court concludes that Mrs. Ministeri is entitled to an award of attorneys' fees pursuant to Section 502(g)(1).

2. *The Amount of Fees*

Mrs. Ministeri requests $123,850 in attorneys' fees for a period stretching from March 15, 2017 to February 12, 2021, broken down as follows: (1) 33.5 hours expended by Richard Sullivan, Esq. at an hourly rate of $650 yielding a total of $21,775[1]; (2) 112.8 hours expended by Eugene Sullivan, Esq. at an hourly rate of $500 yielding a total of $56,400, and; (3) 121.8 hours expended by Teresa Monroe, Esq. at an hourly rate of $375 yielding a total of $45,675.

As is customary in this circuit, the Court uses the "lodestar" calculation for determining the appropriate fee award. See Torres–Rivera v. O'Neill–Cancel, 524 F.3d 331, 336 (1st Cir. 2008). Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The base calculation of the lodestar is relatively straight forward. It is reached "by multiplying the number of hours productively spent by a reasonable hourly rate to

---

[1] The Court notes that both parties, in their briefs, seem to attribute 31.5 hours to Richard Sullivan but this attorney's time records reflect 33.5 hours billed. Doc. No. 60-6 at 6.

calculate a base figure." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009); accord Hensley, 461 U.S. at 433 (starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). Courts may then, in their discretion, adjust the lodestar up or down to account for any other relevant factors. See Torres-Rivera, 524 F.3d at 335.

**i. Hourly Rates.** Reliance argues the Court ought to reduce the hourly rate charged by each of plaintiff's counsel by 25 percent because, according to Reliance, Mrs. Ministeri has failed to meet her burden of demonstrating that her attorneys' proposed rates are reasonable. There is some merit to this argument. Although Richard and Eugene Sullivan's declarations establish that they are experienced attorneys, it does not appear that either has experience in ERISA matters specifically. Moreover, their declarations offer only modest support for their assertions that they are entitled to hourly fees of $650 and $500, respectively. Eugene Sullivan's declaration does not offer any explanation to justify his proposed hourly rate, Doc. No. 60-5, while Richard Sullivan's declaration only offers the somewhat conclusory assertion that his prior cases have generated fees "which, if averaged out on an hourly basis would yield an hourly rate significantly higher than the $650.00 per hour sought in this case." Doc. No. 60–6 at 3. Neither has submitted any other evidence suggesting their proposed rates are reasonable. In light of these circumstances, the Court shall reduce their proposed hourly rates by 15 percent, yielding an hourly rate of $487.50 for Richard Sullivan and $375 for Eugene Sullivan.

The Court shall not, however, reduce Teresa Monroe's proposed hourly rate of $375. Monroe's declaration establishes that she has some level of familiarity with ERISA litigation. Doc. No. 60-7 at 3. Moreover, Monroe's declaration adequately explains the basis for her proposed hourly rate. Specifically, Monroe explains that she worked for twelve years at the large

firm Boies Schiller Flexner LLP, where her time was billed at more than $650 per hour, id. at 2–3, and further explains that her hourly rate is $375 at her current firm, id. at 4. The Court thus concludes her proposed rate of $375 is reasonable.

Next, Reliance argues the Court should divide counsel's billed hours into "core" and "non-core" hours, and tax a lower hourly rate for "non-core" work. Doc. No. 67 at 12 (citing McGahey v. Harv. Univ. Flexible Benefits Plan, 685 F. Supp. 2d 181, 183 (D. Mass 2010)). The Court declines to do so. Such a division is a matter of discretion and not of right, and the record in this case does not reveal an adequate basis for doing so. See Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 101 (D. Mass. 1998) (separating "core" and "non-core" hours to account for "over-conferencing"). In any event, many of the activities to which Reliance points, see Doc. No. 67 at 12, as examples of plaintiff's counsel's "non-core" work, such as reviewing recent case law, strike the Court as quintessentially "core" legal work.

**ii. Billable Hours.** Reliance argues that the 266.1 hours billed by plaintiff's attorneys on this matter are excessive or otherwise inflated. Specifically, Reliance argues (1) that plaintiff's counsel's lack of experience in ERISA matters resulted in otherwise unnecessary legal research, (2) that plaintiff's counsel spent excessive time in reviewing the record and preparing for summary judgment, (3) that plaintiff should not be allowed to recover for time spent, when drafting her Complaint, in asserting claims against her husband's former employer, and (4) that plaintiff may not recover for legal fees incurred prior to the drafting of her Complaint. The Court takes these arguments in turn.

First, the Court agrees with Reliance, as a general proposition, that attorneys who are already subject-matter experts in the intricacies of ERISA law are likely to be more efficient than attorneys new to that field. See Doc. No. 67 at 14 (arguing: "Hourly rates for attorneys are

12

supposed to be proportional to the attorney's experience and, thus, inversely proportional to the time the attorney must expend on the matter.") But the Court has already discounted the hourly rates of those of plaintiff's counsel who were relatively inexperienced in ERISA matters, partly due to their lack of experience. Reducing plaintiff's counsel's hours billed, in addition to their hourly rate, would give too much weight to their lack of subject-matter expertise. The Court has reviewed the time entries which Reliance argues, in particular, reflect excessive time spent conducting legal research. Id. at 15. In general, these time entries are in the range of 0.5 to 2 hours and reflect reasonable levels of effort given the complexity of the issues raised in this case. The larger time entries are also easily explained. For example, Monroe's entries on April 30, 2020 and May 1, 2020 reflect that she spent the entirety of both days working on Mrs. Ministeri's case. But these efforts were entirely appropriate, given that Monroe had only just joined the litigation and was attempting to come up to speed so that she could assist in preparing an important filing due May 1st. Overall, the Court concludes plaintiff's counsel's lack of ERISA expertise did not unreasonably inflate the hours expended on this case.

Second, the Court disagrees with Reliance's contention that plaintiff's counsel spent excessive time reviewing the record and preparing for summary judgment. The role of summary judgment in an ERISA case differs from its role in an ordinary civil case, where summary judgment merely serves as a procedural device to screen out cases that present no trial-worthy issues. See Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002); Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006); cf. Fed. R. Civ. P. 56. In the ERISA context, summary judgment plays a role of outsized importance as it is "the vehicle for deciding the case." Bard, 471 F.3d at 235. Here, plaintiff's counsel collectively spent 143.2 hours preparing their summary judgment briefing. This number does not appear facially unreasonable in light of the 2,700-page

13

administrative record, the complexity of the issues involved, and the sums at stake. Indeed, from the Court's own review of the time records, it appears that the bulk of these hours were expended responding to Reliance's cross motion for summary judgment, in which Reliance improperly raised new rationales for denial. Reliance's decision to improperly raise these new rationales added considerably to the complexity of the case, explaining why these additional hours of work were required. For these reasons, the Court also disagrees with Reliance's contention that the roughly twenty hours plaintiff's counsel spent preparing for oral argument on the cross motions for summary judgment was excessive.

Third, the Court agrees that Reliance should not have to cover those attorneys' fees associated with the time spent researching and drafting claims against Mr. Ministeri's employer, a party that was dismissed early in this litigation. Unfortunately, the time records provided by plaintiff's counsel do not distinguish between hours spent preparing the claims against Reliance and hours spent preparing the claims against Mr. Ministeri's employer. The time records provided by Eugene Sullivan (the only attorney to bill for work on the Complaint) reveal that he spent 12.2 hours preparing the Complaint between November 2, 2017 and December 6, 2017. Because the Court is unable to determine which of these hours were spent pursuing claims against Reliance, the Court reduces Eugene Sullivan's time entries during this period by half.

Finally, Reliance argues that the text of ERISA's fee-shifting provision "categorically" does not permit Mrs. Ministeri to recover fees for the hours her attorneys spent preparing her case before they began drafting the Complaint. Doc. No. 67 at 13 (quoting McGahey, 685 F. Supp. 2d at 183). But that is just not so. True, many courts have "concluded that ERISA attorney's fees are categorically unavailable for expenses incurred while exhausting administrative remedies." McGahey, 685 F. Supp. 2d at 183 (emphasis added) (quoting

Giannone v. Metro. Life Ins. Co., Civ. No. 08-10435-RGS, 2004 WL 1588310, at *2 (D. Mass. Jul. 16, 2004)). But fees may nonetheless be recovered under Section 502(g)(1) for "work performed before the filing of the complaint [such as] conferences with clients, drafting the complaint and other reasonable efforts directed toward the filing of the litigation." Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001) (quoting Cann v. Carpenters' Pension Tr. Fund for N. Cal., 989 F.2d 313 (9th Cir. 1993)); accord Peterson v. Cont'l Cas. Co., 282 F.3d 112, 121 n.5 (2d Cir. 2002) ("Of course, [the prevailing party] is entitled to collect a reasonable amount for fees and costs incurred in initiating suit in the District Court."); see also Colby v. Assurant Emp. Benefits, 635 F. Supp. 2d 88, 99–100 (D. Mass. 2009) (Young, J.) (same). Plaintiff's counsel did not represent Mrs. Ministeri during the administrative proceeding and, indeed, became involved in this matter long after that proceeding had concluded. The case law cited by Reliance is thus inapplicable. Having reviewed the relevant records, the Court finds that all of plaintiff's counsel's pre-complaint activities were "directed toward the filing of the litigation," Dishman, 269 F.3d at 988, and therefore fall within the sweep of Section 502(g)(1).

      **iii. Block Billing.** Reliance's final objection is that several of Teresa Monroe's time entries constitute block booking because they reflect that she spent the entire day working on Mrs. Ministeri's case without detailing precisely how that time was spent. But the four time entries identified by Reliance, Doc. No. 67 at 17, are reasonably detailed in that they specify how many hours Monroe worked on those days, the nature of the work she undertook, her work product, and the sources she reviewed. The Court therefore concludes Monroe, and plaintiff's other attorneys, did not engage in block booking of the sort warranting a reduction in the fee award.

      3.    *Conclusion*

For these reasons, the Court concludes that Mrs. Ministeri is entitled to a fee award, but that her fee request ought to be reduced in the manner set forth herein.

C.  Costs

Mrs. Minister seeks to recoup $426.73 in costs. Reliance has not opposed this request. The Court therefore awards Mrs. Ministeri her costs.

IV. CONCLUSION

Accordingly, Mrs. Ministeri's Motion for Attorneys' Fees (Doc. No. 59) is ALLOWED IN PART and DENIED IN PART as detailed herein. Reliance's Motion to Strike (Doc. No. 71) is DENIED. The Court hereby ORDERS that the parties shall jointly submit a proposed amended judgment consistent with this Order within twenty-one days.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge